UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------X
ARUBA HOTEL ENTERPRISES N.V.,           :
                                        :
                   Plaintiff,           :
                                        :   **COMPLAINT**
         v.                             :
                                        :
MICHAEL BELFONTI, MCR PROPERTY          :   07 Civ. _____
MANAGEMENT INC. and CEB                 :
IRREVOCABLE TRUST,                      :
                                        :
                   Defendants.          :
------------------------------X

Plaintiff, Aruba Hotel Enterprises N.V. ("AHE"), by its attorneys, for its Complaint, alleges upon information and belief, except as to matters pertaining to itself and as otherwise indicated, as follows:

### PRELIMINARY STATEMENT

1. This case arises from a fraudulent scheme orchestrated and perpetrated by defendant Michael Belfonti ("Belfonti") to strip AHE of important assets and rights during a time when Belfonti was the controlling principal of AHE.

2. In 2006, Belfonti, through two corporate entities which, upon information and belief, he beneficially owned and controlled, obtained two loans to finance the purchase of the Wyndham Aruba Beach Resort & Casino – now known as the Westin Aruba Resort and Hotel – a resort hotel property located in Aruba (the "Hotel").

3. One of the loans (the "Mezzanine Loan") was non-recourse and was secured by the equity in a holding company that owned the Hotel through its indirect subsidiary, AHE. The other loan (the "First Mortgage Loan") was secured by the Hotel itself.

4. Upon information and belief, by early 2007, Belfonti anticipated that he would shortly default on both the Mezzanine and First Mortgage Loans. Accordingly, prior to the default on the Mezzanine Loan, he secretly and fraudulently amended a critical provision in the lease agreement for operation of the Hotel's casino to his personal advantage without the knowledge or consent of either of the lenders. The lenders' consent was required for any amendment to the lease agreement. This fraudulent conduct was carried out without the lenders' knowledge or consent and is presently the subject of pending litigation in both New York State Supreme Court and in Aruba.

5. Following Belfonti's loan defaults, the lender of the Mezzanine Loan, Petra Fund REIT Corp., through its nominee Petra Mortgage Capital Corp. LLC (collectively, "Petra"), foreclosed on the loan and became the beneficial – and current – owner of AHE.

6. In response to the claims brought against Belfonti – and the various entities that, upon information and belief, he beneficially owns and controls – in New York and Aruba, Belfonti and the other Defendants have suddenly adopted the position that they are entitled to repayment of alleged "loans" made to AHE during the period of time when AHE was owned and controlled by Belfonti.

7. Upon information and belief, this new "claim" was fabricated by Belfonti in an attempt to gain leverage in the pending litigations concerning the fraudulent casino lease amendment.

8. Even if any monies were actually paid by Defendants, and even if any such monies were "advanced" to AHE – as opposed to being paid directly to the lenders in satisfaction of the loan obligations – such payments would have been payments by the Hotel's then beneficial owner and cannot be characterized as "loans".

9. If those monies (assuming any were actually paid) are characterized as "loans," it would cause AHE, and its new ownership, to be in default on the First Mortgage Loan. This would cause serious, irreparable harm to AHE.

10. For this reason, AHE brings this action for a declaratory judgment, pursuant to 28 U.S.C. § 2201(a), that the monies allegedly advanced by Defendants to AHE (assuming that such monies were so advanced) were not "loans" to AHE. AHE also seeks injunctive relief precluding the Defendants from seeking to enforce the alleged "loans" pending the final disposition of this action.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the dispute is between citizens of one or more United States states on the one hand and a citizen of a foreign state on the other hand.

12. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a)(2) and/or (a)(3) because a substantial part of the events or omissions giving rise to AHE's claim occurred, or a substantial part of property that is the subject of the action is situated, in this judicial district and because Defendants are subject to personal jurisdiction in this judicial district.

## PARTIES

13. AHE is an Aruban limited liability company with its principal place of business in Aruba.

14. Belfonti is an individual citizen of the State of Connecticut.

15. Upon information and belief, MCR Property Management Inc. ("MCR") is a Connecticut corporation with its principal place of business in Connecticut.

16. Upon information and belief, CEB Irrevocable Trust ("CEB") is a trust with its principal place of business in Connecticut.

## STATEMENT OF FACTS

17. To finance the purchase of the Hotel, Belfonti – through two of the corporate entities which he, upon information and belief, beneficially owns and controls – obtained two loans. The first loan was the First Mortgage Loan, which was made to AHE by WIBC Aruba N.V. (an affiliate of Wachovia Bank, National Association) in the amount of $230,000,000.00. The terms of the First Mortgage Loan were memorialized in a loan agreement between AHE and WIBC Aruba N.V., dated May 3, 2006 (the "Mortgage Loan Agreement"). Petra participated in the First Mortgage Loan as the holder of the most junior interest therein, in the amount of $30,000,000.00.

18. The second loan was the Mezzanine Loan, which was made by Petra to a Belfonti-controlled entity known as BCP Florin, LLC ("BCP Florin") in the amount of $19,450,000.00. The terms of the Mezzanine Loan were memorialized in a loan and security agreement executed on or about June 9, 2006 (the "Mezzanine Loan Agreement").

19. The Mezzanine Loan was secured by a first priority security interest in one hundred percent of the issued and outstanding equity of Twilight Holdings, LLC ("Twilight"). Twilight – a Delaware limited liability company that was, at the time, upon information and belief, beneficially owned and controlled by Belfonti – is an indirect subsidiary of BCP Florin.

20. At the time the Mezzanine Loan was made, the Hotel was owned by AHE, an indirect subsidiary of BCP Florin and Twilight which, like those entities, was, upon information and belief, beneficially owned and controlled by Belfonti.

21.  Belfonti was a signatory to both the Mortgage Loan Agreement and the Mezzanine Loan Agreement and was aware of all of the material terms set forth therein.

22.  Under section 3.1.24(d) of the Mortgage Loan Agreement, AHE was not permitted to incur indebtedness of the type alleged by Defendants to have been created by AHE to them.

23.  A breach of section 3.1.24(d) of the Mortgage Loan Agreement gives rise to a default under the Mortgage Loan Agreement for which there is no right to cure.

24.  In April 2007, AHE defaulted on the First Mortgage Loan and BCP Florin defaulted on the Mezzanine Loan. Thereafter, Petra voluntarily cured the default on the First Mortgage Loan, foreclosed on its security interest in Twilight under the Mezzanine Loan and, in consequence, became the beneficial – and current – owner of Twilight's indirect subsidiary, AHE.

25.  In July 2007, AHE commenced an action in Aruba against Diamond Gaming Corporation, N.V. ("Diamond Gaming") – a company beneficially owned and controlled by Belfonti that was used by Belfonti in connection with the above-described scheme involving the casino lease – seeking, *inter alia*, immediate termination of Diamond Gaming's involvement in the operation of the casino.

26.  On July 23, 2007, Petra commenced an action in New York State Supreme Court, against Belfonti and a number of the corporate entities that, upon information and belief, he beneficially owns and controls, seeking to recover for fraudulent conveyances and for tortious interference with the Mezzanine Loan Agreement, and to enforce a personal guaranty made by Belfonti and his father and an indemnity obligation owed to Petra by BCP Florin and Belfonti.

Case 3:07-cv-01297-JCH    Document 1    Filed 08/27/07    Page 6 of 9

That action also arises out of Belfonti's fraudulent scheme concerning the casino lease. A copy of the Complaint filed in the New York action, without exhibits, is annexed hereto as Exhibit A.

27. On August 21, 2007, AHE received a letter from the law firm representing Diamond Gaming in the pending Aruban litigation. A copy of the letter, and its English translation, is annexed hereto as Exhibit B.

28. The letter, which was sent on behalf of Belfonti Holdings, LLC ("Belfonti Holdings"), Belfonti Capital Partners, LLC ("BCP"), MCR and CEB, claims that all four of these entities made purported "loans" to AHE during the time that Belfonti was the controlling principal of AHE. The letter demands repayment of the purported "loans" by August 24, 2007 at 12:00 noon. The letter describes the purported "loans" as follows:

- US $4,873,702.86 purportedly given to AHE by BCP for operating expenses;

- US $499,950.00 purportedly given to AHE by Belfonti Holdings for working capital contribution to the Hotel's management company;

- US $393,000.00 purportedly given to AHE by BCP for AHE's mortgage payment;

- US $1,307,611.80 purportedly given to AHE by MCR for AHE's mortgage payment;

- US $548,250.00 purportedly given to AHE by CEB for AHE's mortgage payment;

- US $1,161,874.00 purportedly given to AHE by MCR for AHE's mortgage payment.

29. Upon information and belief, BCP, Belfonti Holdings, MCR and CEB are all entities beneficially owned and controlled by Belfonti.

30. If any monies were advanced to AHE as alleged by Defendants, they cannot be characterized as "loans".

31. Alternatively, if the monies purportedly advanced to AHE are construed as loans, they cannot be enforced.

32. The purported "loans" allegedly made to AHE are prohibited by Section 3.1.24(d) of the Mortgage Loan Agreement.

33. As signatory to the Mortgage Loan Agreement, Belfonti was well aware of its terms and knew that any purported "loans" would be in violation of the Mortgage Loan Agreement.

34. In addition to violating the plain language of the Mortgage Loan Agreement, any attempt to enforce the purported "loans" could force AHE to default on the First Mortgage Loan.

35. Any claim by the Defendants that any monies allegedly advanced to AHE were intended to be repaid constitutes a breach of Belfonti's duties to AHE as former principal of AHE.

36. Moreover, any transaction by the Defendants which could be characterized as an indebtedness to be repaid by AHE would, upon information and belief, constitute a breach of Belfonti's duties to AHE under applicable law.

37. Additionally, if the monies purportedly advanced to AHE are construed as loans, they cannot be enforced insofar as they were made in direct violation of AHE's Articles of Incorporation.

### COUNT ONE
#### (For Declaratory Judgment under 28 U.S.C. § 2201(a))

38. AHE repeats and realleges paragraphs 1 through 37 as if fully set forth herein.

39. An actual justiciable case or controversy exists between AHE and the Defendants as to the Defendants' right to demand repayment of the monies allegedly advanced to AHE.

40. AHE seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201(a), that the monies allegedly advanced to AHE (if such monies were, in fact, advanced) were not "loans" and that said sums of money are not repayable to Defendants.

41. Alternatively, if the monies allegedly advanced to AHE are construed as "loans", AHE seeks a declaratory judgment that they cannot be enforced as such under applicable law.

42. Creation of indebtedness by AHE, to and through the Defendant entities beneficially owned and controlled by Belfonti, would violate the restrictions on indebtedness set forth in the Mortgage Loan Agreement and cause AHE to be in default on the First Mortgage Loan. As such, any attempt by Defendants to seek repayment of the purported "loans" threatens to cause AHE immediate irreparable harm.

43. Accordingly, Defendants should be enjoined from making any attempt to obtain repayment of the monies allegedly advanced to AHE until the resolution of this action.

## **PRAYER FOR RELIEF**

WHEREFORE, AHE prays for judgment against Defendants as follows:

A. A declaration that the monies allegedly advanced to AHE by the Defendants were not loans or, alternatively, cannot be enforced as loans;

B. An injunction precluding the Defendants from attempting to obtain repayment of the monies allegedly advanced to AHE until the resolution of this action;

C. An award of all attorney's fees, costs and other litigation expenses incurred by AHE to the extent recoverable under applicable law; and

D.  Such other and further relief as this Court may deem just and proper.

Dated: Hartford, Connecticut
       August 27, 2007

By _____*Lissa J. Paris*_____
Lissa J. Paris - ct04251

Murtha Cullina LLP
Whitney Grove Square
2 Whitney Avenue
New Haven, Connecticut 06510-1220
Telephone: (203) 772-7700
Facsimile: (203) 772-7723
Email: lparis@murthalaw.com

-and-

PROSKAUER ROSE LLP
Richard M. Goldstein
Michael T. Mervis
Stacy L. Ceslowitz
Patrick J. Dempsey
1585 Broadway
New York, New York 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900

*Attorneys for Aruba Hotel Enterprises N.V.*